## INHABITANTS OF ORLAND *versus* INHABITANTS OF ELLSWORTH.

Section 6, of c. 63, of the Public Laws of 1861, requiring towns to make proper provision for the support of soldiers' families residing therein, and prohibiting any disabilities therefrom, was applicable only to the first ten regiments.

Chapter 127, of the Public Laws of 1862, approved March 18, was prospective in its operation.

Supplies furnished the families of soldiers of any other than the first ten regiments before March 18, 1862, must be deemed pauper supplies.

ON REPORT.

ASSUMPSIT for supplies furnished to one Moore, wife and children, from Jan. 1, 1866, to Dec. 1, 1867, they having fallen into distress in the plaintiff town where they were then living and in need of support. The plaintiff introduced evidence tending to show that the alleged paupers had their settlement in the defendant town at the time the supplies were furnished, and that the defendants were duly notified.

The defendants offered evidence tending to show that Moore enlisted Nov. 4, 1861, in the 11th Maine Regiment, and was duly mustered into the U. S. service.

The plaintiffs then proved that supplies were furnished to Moore's family, (which had then fallen into distress,) on Feb. 19, 1862, up to which time said Moore continued in the military service.

The case was then withdrawn from the jury, and reported to the full Court, with the agreement, if the furnishing of the supplies on Feb. 19, 1862, subjected Moore and family to the disabilities of paupers, the defendants should be defaulted, and damages assessed by a person to be appointed by the Court.

*T. C. Woodman,* for the plaintiffs.

*A. Wiswell* and *Eugene Hale,* for the defendants.

APPLETON, C. J. — The R. S., 1857, c. 24, is the general law determining the duties, obligations and liabilities of towns in relation to paupers, except where it may have been changed or modified by subsequent enactments.

The pauper law was modified in relation to the soldiers of ten regiments, raised by virtue of the Act approved April 25, 1861, c. 63. By § 6, it is made the duty of cities and towns to provide aid for the families of soldiers enlisted in those regiments, and they were required so to do. *Milford* v. *Orono,* 50 Maine, 529; *Veazie* v. *China,* 50 Maine, 518. But it is provided that, "no disabilities o any kind whatever shall be created by reason of aid so furnished and received.

Joseph D. Moore, the alleged pauper, enlisted in the 11th Maine Regiment, on Nov. 4, 1861, and his family, having fallen into distress, received aid from the plaintiffs on the 19th of February, 1862, at which time said Moore was in the service of the United States.

It is conceded that the pauper, having enlisted in the 11th regiment, is not within the provisions of the Act of 1861, c. 63, as that Act by its terms is made applicable only to the first ten regiments raised. The supplies then were furnished under and by virtue of the general pauper law of the State, R. S., 1857, c. 24, and subjected the recipients to the disabilities created by and arising under that law.

The Act of 1862, c. 127, does not alter the previously existing rights of towns, or remove the disabilities already created by the general pauper law of the State. It was enacted and became a law on 18th March, 1862. This was after the enlistment of Moore, and after the supplies to his family had been received. The law is prospective in its operation. It makes provision for the future, and leaves the past as it found it. The towns, cities and plantations "are hereby severally empowered" to raise money to aid the families of volunteer soldiers. Provision is made for the reimbursement of "the money so applied" from the State treasury, but none for money so applied previous to the

passage of the Act to aid the families of soldiers of regiments raised after the first ten.

It is enacted, by § 5, that "no pauper disabilities shall be created by reason of receiving the aid provided for in this Act." But the aid received by the family of Moore was before the passage of this Act, and therefore it would not be within its provisions.

The seventh section of c. 127 is in these words :— "Section sixth, of chapter sixty-three of the Public Laws of 1861, is *hereby* repealed, and the provisions of the Act passed April 25, 1861, in relation to the relief of families of soldiers, sailors or marines, is *hereby* extended to all the regiments which have been or may be raised in this State." That is, it is henceforth made the duty of towns, cities and plantations to aid the families of all soldiers in the service of the United States, no matter when nor in what regiment they might have enlisted. The families of all soldiers and sailors are thenceforth alike entitled to relief.

But no provision is here made for the case of supplies furnished the families of those who enlisted after the first ten regiments were raised, and before the passage of the Act of 1862, c. 127. Disabilities arising in the intervening time are not removed. Existing rights remain unaffected. All legislation is presumably prospective. Nothing indicates a legislative intention to act retrospectively. It probably did not occur to the Legislature that supplies might have been furnished to soldiers who could derive no benefit from the Act of 1861, c. 63, because they did not enlist in the ten regiments to which that Act applied, and who were not within the Act of 1862, c. 127, because they enlisted before its passage. Whether, if they had attempted to change rights previously acquired under then existing laws, they could constitutionally have done so, is a question which it is unnecessary to consider or discuss.

*Defendants defaulted, and C. J. Abbott, Esq.,*
*is appointed to assess damages.*

Kent, Walton, Barrows and Danforth, JJ., concurred.